NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYRONE G. AULL, | Hon. Harold A. Ackerman |
| Plaintiff, | Civil Action No. 06-2752 (HAA) |
| v. | **OPINION AND ORDER** |
| MCKEON-GRANO ASSOCIATES, INC., UNIVERSITY OF MEDICINE & DENTISTRY OF NEW JERSEY, | |
| Defendants. | |

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion to dismiss, based upon a contractual statute of limitations, by Defendants McKeon-Grano Associates, Inc. ("McKeon-Grano") and University of Medicine & Dentistry of New Jersey ("UMDNJ") (collectively "Defendants"). Plaintiff Tyrone G. Aull opposes the motion on the ground that the Uniformed Services Employment and Reemployment Rights Act of 1994 nullifies or pre-empts the contractual statute of limitations. For the following reasons, Defendants' motion will be granted.

*Background*

On April 1, 2002, Aull began working for McKeon-Grano as an architectural designer at one of its client locations, UMDNJ in Newark, New Jersey. Aull's working arrangement was

governed by an employment agreement between him and McKeon-Grano. On December 8, 2003, Aull received official orders from the Department of the Army notifying him that he was being ordered to active duty in mobilization for Operation Iraqi Freedom. Aull performed active duty with the United States Army from January 3, 2004 to December 31, 2004, at which time he was honorably released from active duty. Aull provided timely notice to McKeon-Grano that he was available to resume work and McKeon-Grano subsequently ordered Aull to present himself for work on May 2, 2005, at which time he signed another employment agreement that contained substantially the same terms as the 2002 agreement.

The new employment agreement stated that Aull would be reinstated as an employee at the same hourly wage, $39.10, he had prior to being mobilized for the Army. But apparently Aull was verbally informed that his new job assignment would be for 37.5 hours instead of the 40 he had been working prior to going on active duty. In addition, McKeon-Grano verbally communicated to Aull that his previous assignment at UMDNJ had been eliminated because UMDNJ gave that job to another vendor that was not McKeon-Grano.

Subsequent to his return to work, Aull alleges that he began doing the same work he had done prior to active duty, with the same job duties working for the same supervisors. Aull alleges that he complained to McKeon-Grano that he was doing the same job as before active duty, so therefore he should have the same hours because his job had not in fact been given to another vendor of McKeon-Grano's client UMDNJ.

On May 31, 2005, Aull met with the head of McKeon-Grano, Thomas McKeon, and complained that both Defendants were violating his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). Aull alleges that he

continued to assert his rights under USERRA to McKeon-Grano, but was subsequently verbally terminated by Thomas McKeon on August 2, 2005 for poor work performance.

Paragraph 15 of the employment agreement states that Aull agreed to bring any claim or action against Defendants within six months from the date of any termination. On June 16, 2006, more than ten months after termination, Aull filed this Complaint, alleging that Defendants discriminated and retaliated against him due to his active duty military service with the United States Army, in violation of USERRA. Defendants have moved to dismiss the Complaint based upon Aull's failure to comply with the contractual statute of limitation listed in paragraph 15 of the employment agreement. Aull responds that a specific provision of USERRA supersedes the employment agreement on this point and therefore his claim is not time-barred. Aull's argument in this regard is a matter of first impression for the courts in interpreting USERRA.

*Analysis*

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court is required to accept as true the facts and allegations contained in the complaint and all reasonable inferences drawn therefrom, and to view the facts in the light most favorable to the non-moving party. *Sadruddin v. City of Newark*, 34 F. Supp. 2d 923, 925 (D.N.J. 1999); *see also Gen. Motors Corp. v. New A Chevrolet, Inc.*, 263 F.3d 296, 325 (3d Cir. 2001). While the Court will accept as true all reasonable inferences and well-pleaded allegations, it will not accept "unsupported conclusions and unwarranted inferences" or legal conclusions cast in the form of factual allegations. *Langford v. City of Atlantic City*, 235 F.3d

845, 847 (3d Cir. 2002). In the complaint, the claimant must set forth sufficient information to provide defendant with notice of the plaintiff's claims, such as the elements of the claims. *Id*; *see also* Fed. R. Civ. P. 8(a)(2). A "complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff['s] cause of action." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The Supreme Court has explained:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47-48 (1957). "The court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

"A court may dismiss a complaint for failure to state a claim, based on a time-bar, where 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 n.11 (D.N.J. 2003) (quoting *Bethel v. Jendoco Constr. Co.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). The Court looks to the allegations of the Complaint when reviewing the Complaint for dismissal on statute of limitations grounds: "When reviewing a Rule 12(b)(6) dismissal on statute of limitations grounds, we must determine whether the time alleged *in the statement of a claim* shows that the cause of action has not been brought within the statute of limitations." *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (emphasis in original).

Although a statute of limitations defense is not included in the enumerated defenses listed

in Rule 12(b), the Third Circuit has instructed that a statute of limitations may be raised in a Rule 12(b)(6) motion to dismiss where it is clear on the face of complaint that the action is not brought within the statute of limitations. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *Davis v. Grusemeyer*, 996 F.2d 617, 622 (3d Cir. 1993). In determining whether an action should be dismissed for non-compliance with a statute of limitations, the Third Circuit has cautioned the district courts that "[if] the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

*A. USERRA's provisions*

      Congress passed USERRA in 1994, declaring in the opening section the Act's purpose:

> (a) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service.
>
> (b) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
>
> (c) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301. The Court recognizes that, as a general matter, the provisions of USERRA are to be liberally construed in favor of the uniformed service member. *See Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004) ("[W]e construe USERRA's provisions liberally, in favor of the

5

service member"); *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312-13 (4th Cir. 2001) ("Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries"); *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998) ("USERRA is to be liberally construed in favor of those who served their country"); *see also Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) (noting that predecessor statute to USERRA "is to be liberally construed for the benefit of the returning veteran").

Section 4302(b) declares that USERRA

> supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. 4302(b). In other words, USERRA only supersedes a contract or agreement if that contract or agreement "reduces, limits, or eliminates" a "right or benefit" provided for under USERRA. With respect to what qualifies as a "right or benefit" under USERRA, § 4303(2) provides the following definition:

> The term "benefit", "benefit of employment", or "rights and benefits" means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. 4303(2); *see also Garret v. Circuit City Stores, Inc.*, 449 F.3d 672, 678 (5th Cir. 2006) (finding that "the defined substantive rights [of § 4303(2)] relate to compensation and working conditions, not to affording a particular forum for dispute resolution"); *Thomsen v. Dep't of Treasury*, 169 F.3d 1378, 1381 (Fed. Cir. 1999) ("the statutory scheme makes clear that a nexus between an allegedly-denied benefit and one's employment is an essential component of this type of USERRA claim."); *Wriggelsworth v. Brumbaugh*, 129 F. Supp. 2d 1106, 1110 (W.D. Mich. 2001) (holding that police detective's clothing allowance is a "right and benefit" under § 4303(2)); *Melvin v. United States Postal Service*, 79 M.S.P.R. 372, 377 (M.S.P.B. 1998) (finding that "[b]oth retention as a transitional employee and appointment to a casual position can be viewed as a 'benefit of employment' given the breadth of [§ 4303(2)'s] definition"); *Petersen v. Dep't of Interior*, 71 M.S.P.R. 227, 236 (M.S.P.B. 1996) (holding that law enforcement position as Park Ranger constitutes 'benefit of employment' under § 4303(2)); *but see Wilborn v. Dep't of Justice*, 230 F.3d 1383, at *2 (Fed. Cir. 2000) (table of unreported decisions) (concluding that Merit Systems Protection Board did not have jurisdiction to hear claim that employer violated USERRA because not receiving "preference" did not constitute benefit of employment under the Act).

USERRA does not provide any express statute of limitations for bringing a claim under the Act, but it does explicitly declare that "[n]o State statute of limitations shall apply to any proceeding under this chapter." 38 U.S.C. 4323(i). The lack of a statute of limitations within the four corners of the Act raises the question of whether any statute of limitations applies to USERRA claims. A general four-year statute of limitations applies to federal claims stemming from laws enacted after December 1, 1990: "[e]xcept as otherwise provided by law, a civil action

arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

Clearly, USERRA was enacted after December 1, 1990 and therefore, at first blush, it would appear that § 1658(a)'s four-year statute of limitations would apply to any USERRA claim. But some jurisdictions have concluded that USERRA did not create any new cause of action, but was merely a reformulation of prior acts such that USERRA claims are not subject to the federal four-year catchall. *See Akhdary v. City of Chattanooga*, No. 01-0106, 2002 WL 32060140, *6 (E.D. Tenn. May 22, 2002) (finding that § 1658(a) does not apply because USERRA "does not establish a new cause of action; instead it amends the preexisting law of the VRRA") (citing *Zubi v. AT&T Corp.*, 219 F.3d 220, 225 (3d Cir. 2000)). But as a result of *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 374-75 (2004), decisions like *Akhdary* and the Third Circuit's *Zubi* have been abrogated by the Supreme Court's conclusion that an Act of Congress need not be an entirely new cause of action, but instead may be an amendment to a pre-1990 law for § 1658 to apply for statute of limitations purposes. *Jones*, 541 U.S. at 374-75; *see also O'Neil v. Putnam Retail Mgmt.*, 407 F. Supp. 2d 310, 316 (D. Mass. 2005) (holding that § 1658(a) applied to USERRA claims); *Nino v. Haynes Int'l, Inc.*, No. 05-0602, 2005 WL 4889258, *3 (S.D. Ind. Aug. 19, 2005) (same); *see also Rogers v. City of San Antonio*, 392 F.3d 758, 772 (5th Cir. 2004) (affirming district court's application of §1658(a) to USERRA claim).

Despite such holdings by the various courts cited above, no court within the District of New Jersey or even the Third Circuit has held such. Therefore, this Court concludes that, as a general matter, §1658(a)'s four-year statute of limitations applies to claims brought under USERRA. *See Jones*, 541 U.S. at 374-75.

Initially, this whole discussion may seem to be a non-issue because Aull clearly brought his USERRA claim within four years of the accrual of his cause of action. But after a conclusion that § 1658 applies to a USERRA claim, the question arises as to whether that four-year statute of limitations qualifies as a right or benefit under the Act such that § 4302(b)'s supersession of contracts limiting a right or benefit provided for under USERRA would be applicable to the employment agreement between Aull and Defendants. To date, no court has yet addressed this question.

Defendants argue that, as a general matter, private parties can contract for a shorter time period for the bringing of a claim than that allowed by the general statute of limitations. On this point, Defendants are certainly correct. *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *see also Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 266 (3d Cir. 2003); *Sherwood Jewelers-Newark v. Philadelphia Nat. Ins. Co.*, 102 F. Supp. 103, 104 (D.N.J. 1952) (upholding twelve-month provision in which to bring a claim under insurance contract). Defendants further argue that, "[f]or purposes of this Motion only," § 1658 applies to USERRA claims, but that "neither USERRA nor [§ 1658] in any way prohibit parties such as [Aull] and McKeon-Grano from having contractually agreed to the six (6) month statute of limitations." (Defs.' Br. at 5.) Moreover, Defendants assert that "there is no statutory statute of limitations 'right' provided by USERRA" insofar as "USERRA only expressly prohibits application of state statutes of limitation and is otherwise entirely silent on statute of limitations issues." (Defs.' Reply Br. at 4.) To support their argument that "the statute must prohibit individuals from agreeing to a shorter statute of limitations," (Defs.' Reply Br. at 5), Defendants point to the Supreme Court's decision in *United Commercial Travelers*, which states that "in the

9

absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action." *United Commercial Travelers*, 331 U.S. at 608. However, Defendants neglect to address whether 38 U.S.C. § 4302(b), when read in conjunction with 28 U.S.C. § 1658, constitutes a statutory prohibition on agreements that shorten the length of time in which a service member may bring a USERRA claim.

Understandably, Defendants likely do not address such an interpretation of the statute because Aull fails to clearly articulate the argument as such. Instead, Aull places undue emphasis on the House Report accompanying USERRA before its enactment. Aull quotes the House Report as noting that "[t]he Committee wishes to stress that rights under [USERRA] belong to the claimant, and he or she may waive those rights, either explicitly or impliedly, through conduct. Because of the remedial purposes of [USERRA], any waiver must, however, be clear, convincing, specific, unequivocal, and not under duress." H.R Rep. No. 103-65 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 2449. Aull latches onto the "clear, convincing, specific, unequivocal, and not under duress" language and then launches into an argument about how he never made such a waiver.

The Court finds Aull's argument in this regard entirely misplaced because of its overemphasis on the legislative history instead of the statutory language. The House Report upon which Aull relies is not law because, quite simply, it was never passed through both houses of Congress and the President did not sign such a bill.[1] Aull's usage in this context is

---

[1] "In expounding this law, the judgment of the court cannot, in any degree, be influenced by the construction placed upon it by individual members of Congress in the debate which took place on its passage, nor by the motives or reasons assigned by them for supporting or opposing amendments that were offered. The law as it passed is the will of the majority of both houses,

emblematic of everything that is wrong with resorting to legislative history prior to finding any ambiguity in the statutory language.[2] Even if this Court were to conclude that the statute was somehow ambiguous, this particular language from the House Report is entirely too different from the actual statutory language to be considered as a clear expression of *Congress's* intent; rather, it is a single House Committee's intent.

Despite Aull's overemphasis on applying very specific yet non-binding language from a House Committee Report, the Court is mindful that there is only one way to save Aull's USERRA claim from being barred by the contractual statute of limitations. That recognition brings the Court back around full circle to the question of whether to interpret USERRA as incorporating the federal catchall statute of limitations as a "right or benefit" protected under USERRA.

As noted previously, "the defined substantive rights [of § 4303(2)] relate to compensation and working conditions."[3] Again, USERRA only supersedes a contract or agreement if that

---

and the only mode in which that will is spoken is in the act itself; and we must gather their intention from the language there used, comparing it, when any ambiguity exists, with the laws upon the same subject, and looking, if necessary, to the public history of the times in which it was passed." *Aldridge v. Williams*, 44 U.S. (3 How.) 9, 24 (1845) (Taney, C.J.).

[2] "Resort to legislative history has become so common that lawyerly wags have popularized a humorous quip inverting the oft-recited (and oft-ignored) rule as to when its use is appropriate: 'One should consult the text of the statute . . . only when the legislative history is ambiguous.' Alas, that is no longer funny. Reality has overtaken parody." Antonin Scalia, A Matter of Interpretation 31 (1997).

[3] "The term 'benefit', 'benefit of employment', or 'rights and benefits' means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay,

contract or agreement "reduces, limits, or eliminates" one of the substantive rights within the Act.  *See* 38 U.S.C. § 4302(b).  And Congress expressly declared that state statutes of limitations were inapplicable to USERRA claims.  38 U.S.C. § 4323(i).  Notably, however, Congress did not find it necessary to expressly declare that private *contracts* creating their own statute of limitations were forbidden.  Moreover, if Congress intended the federal four-year statute of limitations under 28 U.S.C. § 1658 to be a "right or benefit" under USERRA, such that § 4302(b), USERRA's supersession section, would preclude any private contractual limitation of § 1658, then presumably Congress would have more expressly stated such.

Instead, the more reasonable statutory interpretation is that Congress envisioned the supersession section as applicable to substantive rights as defined in § 4303(2), and by providing a separate subsection for the supersession of state statutes of limitations, § 4323(i), Congress thereby intimated that statutes of limitations, state or otherwise, were not considered substantive rights under USERRA.  In other words, Congress did not foreclose a uniformed service member from contracting away his right to the four-year statute of limitation.  Instead, Congress merely protected the service member from having a less-than-four-year statute of limitation imposed upon him by his state legislature.  Again, this Court fully appreciates the necessity of construing USERRA in favor of the service member.  *See Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004) ("[W]e construe USERRA's provisions liberally, in favor of the service member").  But even a liberal construction must have some limits.  That is, interpreting this Act as precluding an individual from contracting for a statute of limitation shorter than that available under § 1658

---

supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."  38 U.S.C. § 4303(2).

would be more generous than reasonable.  While the Court's holding in this regard may be one of first impression in interpreting USERRA, the novelty does not necessarily buttress Aull's contrary position.  *See Ueland v. United States*, 291 F.3d 993, 996 (7th Cir. 2002) ("As is true for many legal points, the paucity of support in appellate opinions does more to show that the proposition is too clear to be questioned than to show that it is debatable.").  Therefore, the Court finds that USERRA does not supersede the employment agreement between Aull and McKeon-Grano.

### *B. Contract and its provisions are not unconscionable*

Finally, Aull argues that he "entered into Defendant's employment agreement under duress and therefore it is a contract of adhesion which must be nullified."  (Pl.'s Br. at 8.)  The Court notes, however, that a contract of adhesion is not necessarily unenforceable.  *Alexander*, 341 F.3d at 265.  Therefore, the Court reads Aull's argument as claiming that the contract as a whole, or at least the statute of limitations provision, is unconscionable so as to render the contract invalid.

As a general matter, there are two primary elements to an unconscionability claim: procedural and substantive.  *See id*.  As the names imply "[p]rocedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language."  *Id*. (citations omitted).  Substantive unconcionability "refers to terms that unreasonably favor one party to which the disfavored party does not truly assent."  *Id*.

13

A court must look to the relevant state law to determine whether a contract is valid and enforceable. *Id*. at 264. In *Delta Funding Corp. v. Harris*, the Supreme Court of New Jersey answered several questions certified by the Third Circuit regarding arbitration provisions in a contract. *Delta Funding Corp. v. Harris*, 189 N.J. 28, 39-40 (2006). The Supreme Court of New Jersey explained that there are four factors, in addition to any take-it-or-leave-it nature to a contract, in assessing whether a contract's provision is unconscionable: (1) subject matter of the contract; (2) parties' relative bargaining positions; (3) the degree of economic compulsion motivating the "adhering" party; and (4) the public interests affected by the contract. *Id*. at 40.

In the instant matter, Aull has not clearly delineated between what he considers to be procedurally and substantively unconscionable about the employment agreement. Nevertheless, the Court has endeavored to parse his argument to discern whether either or both aspects are satisfied.

With respect to procedural unconscionability, Aull asserts that "he could not fairly negotiate the terms of his employment" and therefore he "was not on equal footing or bargaining terms" with McKeon-Grano. (Pl.'s Br. at 9.) Aull further declares that "McKeon-Grano dictated the terms of Aull's re-employment and the job offer was a take it or leave it proposition." (*Id*.) While Aull uses all the right buzz-words, he fails to provide any support, by way of his Complaint or otherwise, that he was in a take-it-or-leave-it position with respect to the employment agreement or any provisions therein. As a result, the Court cannot render the contract invalid under the doctrine of unconscionability merely based upon Aull's bald assertions in his brief.

Moreover, utilizing the *Delta* factors, the Court recognizes that an individual employee, such as Aull, likely is in an unequal bargaining position with his employer. But there is nothing to indicate that the inequality here is any greater than the average employer-employee situation, which has existed from time immemorial. In addition, the Court is unable to discern any special "degree of economic compulsion motivating" Aull to sign the employment agreement. *See Delta*, 189 N.J. at 40. That is, Aull does not allege to have been in dire financial straits such that he effectively had no choice but to sign the agreement. In addition, Aull is an educated professional, without any apparent mental infirmities that would give rise to a reasonable suspicion that Defendants took advantage of him. As a result, the Court concludes that the employment agreement did not come about by way of procedural unconscionability.

In regards to substantive unconscionability, Aull argues that "[e]ven a cursory review of the agreements reveals that the boiler plate language was non-negotiable." (Pl.'s Br. at 9.) Aull asserts that because the first agreement he signed in 2002 and the second agreement in 2005 were "nearly identical" that indicated that the agreements were "more of a form than a concise memorialization of a meeting of the minds of the parties over precise details of their legal rights and responsibilities." (*Id.*) The Court remains unconvinced by Aull's argument because it does not necessarily follow that just because the two contracts were "nearly identical" that such a fact somehow made the language non-negotiable; nor does it demonstrate that Aull was not on equal footing with the Defendants. Parties need not consult a thesaurus and develop entirely original phrasing for routine employment contracts in order to survive the doctrine of unconscionability.

Moreover, paragraph 15 of the employment agreement, which provides that any claim must be brought within six months, does not rise to the level of substantive unconscionability. In

*Parilla v. IAP Worldwide Services, VI, Inc.*, the Third Circuit upheld a district court's conclusion that a provision in an employment agreement requiring the employee to file a notice of claim within thirty days was substantively unconscionable.  *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 277-78 (3d Cir. 2004).  The *Parilla* court concluded that such a provision provided the employee with insufficient time to bring a well-supported claim and that it was unduly favorable to the employer.  The instant matter is clearly distinguishable from *Parilla* insofar as six months is not *per se* insufficient time to bring a well-supported claim.  *See, e.g.*, N.J.S.A. § 34:13A-5.4c (six-month statute of limitations under New Jersey Employer-Employee Relations Act); 29 U.S.C. § 160(b) (six-month statute of limitations under National Labor Relations Act).  Furthermore, Aull clearly notes that he learned of his USERRA rights while still working for Defendants and he evidently believed he had a claim before he was even terminated.  Therefore, the Court concludes that the six-month statute of limitations in the employment agreement is not substantively unconscionable.  As a result, the Court finds that the six-month contractual statute of limitations applies and therefore Aull's claim under USERRA is time-barred.

### *Conclusion & Order*

For the foregoing reasons, Defendants' motion to dismiss is hereby GRANTED.  The Clerk shall mark this case CLOSED.

Newark, New Jersey
Dated: February 26, 2007                                  /s/ Harold A. Ackerman
                                                          U.S.D.J.